# Miller v. Wiggins, Appellant.

*Contracts—Building contracts—Measurement of walls—Trade meaning of words—Parol testimony—Evidence.*

1. Where the terms used in a contract are so doubtful and uncertain as to admit of different constructions, parol testimony may be admitted to explain their meaning.

2. Where a contract for the building of a wall provides that "the contractors agree to pay the subcontractors the sum of $2.35 per perch of 24¾ cubic feet measured in wall," and nothing is said as to the method of measurement, nor how the wall is to be measured, nor in case of dispute how the controversy shall be determined, it is proper to admit parol testimony to explain the trade meaning of the words "measured in wall."

*Contracts—Custom—Local custom—Not binding on nonresident—Usage.*

3. Usage is a reasonable and lawful public custom concerning transactions of the same nature as those which are to be affected thereby, existing at the place where the obligation is to be performed, and either known to the parties, or so well established, general and uniform, that they are presumed to have acted with reference to the usage.

4. Usage in a particular locality is something which exists in general repute in the trade affected thereby in that community, and all residents are supposed to know of its existence and are presumed to act and contract with reference to it.

5. There is no presumption that a local custom is known to a nonresident and to make such usage conclusively binding upon him there must be proof of actual knowledge, and it is therefore error to instruct a jury in effect that if they find the local custom to exist the parties are conclusively bound thereby in a case where the party sought to be held to such knowledge is a nonresident of the locality.

Argued Feb. 8, 1910. Appeal, No. 270, Jan. T., 1909, by defendants, from judgment of C. P. Chester Co., Aug. T., 1909, No. 85, on verdict for plaintiff in case of Irwin W. Miller v. John R. Wiggins, W. H. Walls, and F. K. Worley, trading as John R. Wiggins & Company. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Assumpsit on a building contract. Before BUTLER, J.

The facts appear in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,980.47. Defendants appealed.

*Error assigned* was in affirming plaintiff's first point, as follows:

If the jury believe from the evidence that a custom existed among masons, builders, contractors and architects, where the contract was signed and the work done, by which all masonry, unless otherwise provided by special contract, was measured and paid for by what is known as "masons' measurement," which consisted in measuring all openings in the walls as if built up, and the corners and angles twice, that this custom had existed for a period of more than twenty years prior to the date this contract was entered into, that the same was certain, uniform and notorious, and so notorious as to affect the defendants with a knowledge of its existence, then the jury will allow the plaintiff the number of perches so erected by him in accordance with such "masons' measurement." *Answer:* This point we affirm.

*Alfred P. Reid,* for appellants.—To bind a party by local usage, or the usage of a particular trade or profession, he must be shown to have had knowledge or notice of its existence: Walls v. Bailey, 49 N. Y. 464; Bradley v. Wheeler, 44 N. Y. 495; Higgins v. Moore, 34 N. Y. 417; Esterly v. Cole, 3 Comstock, 502.

*T. Walter Gilkyson,* with him *H. H. Gilkyson,* for appellee.— It is well settled that evidence of custom and usage is ad-

missible to explain the meaning of a written instrument: Pittsburg v. O'Neill, 1 Pa. 342; Welsh v. Huckestein, 152 Pa. 27; First National Bank v. Fisk, 133 Pa. 241; McMasters v. Penna. R. R. Co., 69 Pa. 374; Bremerman v. Hayes, 9 Pa. Superior Ct. 8; Silliman v. Whitmer & Sons, 11 Pa. Superior Ct. 243; Prigg v. Preston, 28 Pa. Superior Ct. 272.

OPINION BY MR. JUSTICE ELKIN, March 28, 1910:

This suit grows out of a dispute as to the proper method of determining the number of perches of masonry in a wall built by a subcontractor under a contract in writing with the contractor. The contract provides that "the contractors agree to pay the subcontractor the sum of two dollars and thirty-five cents ($2.35) per perch of $24\frac{3}{4}$ cubic feet measured in wall." The appellants contend that the number of perches is to be determined by ascertaining the actual amount of solid masonry in the wall, while the contention of appellee is that what is known as "masons' measurement," which means that openings are to be included and that corners shall be measured twice, is the proper rule for determining how many perches shall be paid for under the contract. If the contract in terms provided a definite method of measurement no controversy could arise because the contracting parties would be bound by their own covenants. It must therefore be decided whether the contract in question does provide a definite method of measurement so plain and unambiguous as to make its construction one of law for the court, or whether the terms used are so doubtful and uncertain as to admit of different constructions, in which event parol testimony may be admitted to explain their meaning. The only words in the contract relating to the method of measurement are those contained in the phrase "measured in wall." Nothing is said as to the method of measurement, nor how the wall is to be measured, nor in case of dispute how the controversy shall be determined. We think the words used in the contract are not so plain in their meaning as that only one conclusion can be drawn as to the method of measurement and that it was proper to admit parol testimony to explain

the trade meaning of the words used. This conclusion is not one of first impressions but rests upon decided cases in our own state and the great weight of authority elsewhere. The admission of parol testimony to explain the trade meaning of words of doubtful import was sustained in the following cases, and scores of other cases might be cited to the same effect, but these are sufficient to illustrate the principle involved. In Soutier v. Kellerman, 18 Mo. 509, what was meant by "a thousand shingles" in a building contract; in Eldridge v. McDermott, 178 Mass. 256, the meaning of "a bag of oats" in a contract involving the sale of grain; in Baer v. Glaser, 90 Mo. App. 289, the meaning of the word "pound," as used in the silk trade; in Callahan v. Stanley, 57 Cal. 476, what was meant by "stubble" used in a farm contract; in Packard v. Van Schoick, 58 Ill. 79, parol testimony was admitted to explain the meaning of the words, "wall measure," used in a contract somewhat similar to the one involved in the present case; in Walls v. Bailey, 49 N. Y. 464, under a contract to do plastering at a certain sum per square foot parol testimony was admitted to explain the method of measurement under a local custom; and in our own state it has been held competent to show by the testimony of persons in the trade what was meant by the expression "measured in the wall," and how such measurement is made: Welsh v. Huckestein, 152 Pa. 27. Viewed in the light of these authorities there is no escape from the conclusion that parol testimony is admissible in explanation of the method of measurement to be adopted in determining how many perches of masonry "measured in wall" shall be paid for under the present contract. It does not follow, however, that the case as tried in the court below is free from error. The first assignment raises the question whether the affirmance of the first point submitted on behalf of the plaintiff at the trial was error. This question has been very carefully considered here with the result that we feel impelled not only by the great weight of authority but by the reason of the rule itself to sustain the assignment and reverse the judgment with a venire. The point submitted in substance asked the court

to instruct the jury that if they believed from the evidence that there was a local custom at the place the contract was signed, by which all masonry was to be measured by what is known as "masons' measurement," and that this custom had existed for a period of more than twenty years at the time the contract was entered into and that it was so certain, uniform and notorious as to affect the defendants with knowledge of its existence, the plaintiff would under such circumstances be entitled to recover for the number of perches determined upon the basis of that local custom, which was "masons' measurement." If both of the contracting parties had been residents of the community in which the local usage or custom prevailed the point would have correctly stated the rule of law, and its affirmance by the court would have been a proper instruction to the jury. Usage has been defined to be such a reasonable and lawful public custom concerning transactions of the same nature as those which are to be affected thereby, existing at the place where the obligation is to be performed, and either known to the parties, or so well established, general and uniform, that they are presumed to have acted with reference to the usage. Usage in a particular locality is something which exists in general repute in the trade affected thereby in that community, and all residents are supposed to know of its existence and are presumed to act and contract with reference to it. The presumption therefore arises that when two or more residents of a particular locality enter into a contract relating to a particular trade or business, in the absence of an express agreement otherwise providing, intend that the local usage shall be considered as the basis of their covenants and part of their contractual obligations. In such a case when the proof of the usage or custom is sufficient to meet the requirements as to time, certainty, uniformity and notoriety, the contracting parties, if residents, are bound thereby, and it is the duty of the court to so instruct the jury. This rule does not apply to nonresidents who have no knowledge of the local custom. As to nonresidents it has been held in almost every jurisdiction in which the question has been considered, that there

can be no presumption that a stranger in a community is cognizant of a usage prevailing in a particular trade in that particular locality, and hence no presumption that in making a contract he covenanted upon the basis of a local usage of which he did not have notice or knowledge. To make a local usage conclusively binding upon a nonresident it is necessary to show that it was known to him at the time the contract was entered into: 29 Am. & Eng. Enc. of Law (2d ed.), 400; Strong v. King, 35 Ill. 9; Marshall v. Perry, 67 Me. 78; Sawtelle v. Drew, 122 Mass. 228; Hermann v. Fire Ins. Co., 100 N. Y. 411; Insurance Co. v. Harmer, 2 Ohio St. 452; Gilmer v. Young, 122 No. Car. 806.

In the case at bar the affirmance of the point submitted was a binding instruction to the jury to find for the plaintiff on the basis of "masons' measurement," if they found the local custom was certain, uniform and notorious and had existed for a period of more than twenty years. Nonresidents are not presumed to have knowledge of a local custom because it had existed for more than twenty years. There is no presumption that a local custom is known to a nonresident, and to make such usage conclusively binding upon him there must be proof of actual knowledge. The error was in the unqualified affirmance of the first point, which could only mean that if the jury found the local custom to exist the appellants were conclusively bound thereby. The three defendants, all nonresidents, testified that they had no knowledge of the local custom, and there was no positive testimony to the contrary. Under these circumstances there is no presumption that these nonresidents contracted with reference to a local custom of which they had no knowledge. It does not follow, however, that the appellants can put their own construction upon the contract or that the appellee is absolutely precluded from recovering upon the basis of masons' measurement. We simply hold that the local custom was not conclusively binding upon the contracting parties under the circumstances of the present case, and that it was error to instruct the jury in effect that if they found the local custom to exist the parties were conclusively bound thereby.

With or without regard to any custom or usage it must be determined what the parties meant when they wrote into their contract the provision "measured in wall," and how that measurement is to be made.

While custom, as a general rule, may not be introduced for the purpose of enlarging or abridging the terms of a statute or of a contract, it may be heard to interpret either: Helme v. Life Insurance Co., 61 Pa. 107. Even in a case where the evidence may not be sufficient to establish a custom, it is still for the jury to determine how much work was done by the measurements submitted in order to return a verdict for the amount due under the contract: McCullough v. Ashbridge, 155 Pa. 166. In this connection it is proper to introduce in evidence the written bid submitted by appellee as the foundation of the contract and in explanation of any ambiguous terms employed in the final agreement. This bid specified masons' measurement and provided that a perch shall consist of twenty-four and three-quarters cubic feet, all of which the testimony shows to be in accordance with that method of measurement. Again, it appears from the testimony that when solid masonry only is measured twenty-two cubic feet make a perch. These are important items of evidence to be considered by the jury in determining what method the parties intended to adopt in their contract. Parol evidence of custom or of persons familiar with the trade may be introduced in explanation of the trade meaning of any ambiguous terms used in the contract, or to show what is meant by masons' measurement in the event the jury shall determine that this method of measurement was intended by the contracting parties. The written bid submitted by appellee was sufficient to put appellants upon inquiry as to what was meant by masons' measurement and may properly be considered by the jury in determining whether the parties contracted upon this basis, and if so, how many perches are in the wall thus measured. As we view the case it is competent for both parties to introduce parol testimony in support of their respective contentions, and it will then be for the jury to determine which method of measurement

shall prevail and what sum the appellee is entitled to recover.

The first assignment of error is sustained, judgment reversed and a venire facias de novo awarded.